James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, California 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (phv forthcoming)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JASSON WALLACE,<br><br>Plaintiff,<br><br>v.<br><br>DOORDASH, INC.,<br><br>Defendant. | Case No.: 2:24-cv-10163<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

# COMPLAINT

COME NOW Plaintiff, Jasson Wallace ("Plaintiff" or "Wallace") through his undersigned counsel, and for his Complaint against Defendant, DoorDash, Inc. ("Defendant" or "DoorDash"), states as follows:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. Wallace brings this case to protect his privacy rights; namely, the right to be left alone from unwanted, harassing and incessant robocalls. While Wallace has done everything advised by Defendant to stop these robocalls, Wallace continues to receive hundreds of robocalls from Defendant.

2. Wallace brings this suit to stop companies like Defendant from placing incessant robocalls to him despite never consenting to receive such calls and despite repeatedly advising Defendant to stop calling him.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted robocalls. A leading sponsor of the TCPA described unwanted robocalls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA affords protections to people from receiving robocalls, i.e., prerecorded or artificial voice calls, if the recipients of such calls did not provide their consent to receive such calls. The penalty for placing robocalls to such persons is $500 per call and up to $1,500 if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A); 47 U.S.C. § 227(b)(3); 47 C.F.R. § 64.1200(a); 47 C.F.R. § 64.1200(f)(9).

5. Highlighting the problem of robocalls in this country, from January 2024 through October 2024, approximately 43.7 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 20, 2024).

6. Decades after the TCPA passed into law, it is still unfortunately the case

that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7. Similarly, and further highlighting the problem of unwanted telephone communications, in 2023 alone, there were more than two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission ("FTC"), *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited October 4, 2024).

8. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10. Wallace resides in Lakewood, California and has resided in Lakewood at all times material to this Complaint.

11. Wallace has been a citizen of the State of California at all times material to this Complaint and is currently a citizen of the State of California.

12. This Court has personal jurisdiction over Defendant because its headquarters are in California, it transacts business in California, and engaged in the

conduct at issue in this case in the State of California.

13. Defendant has continuous and systematic contacts with the State of California, and it is reasonable for Defendant to expect to litigate in this Court.

14. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District.

## PARTIES

15. At all times relevant to this Complaint, Wallace was, and is still, the owner of phone, bearing phone number 949-XXX-4267.

16. Wallace has been the subscriber to phone number 949-XXX-4267 since approximately 2004.

17. Defendant DoorDash, Inc. is a Delaware corporation that is registered with the California Secretary of State as a foreign corporation authorized to transact business in the State of California.

18. Defendant's principal place of business is in San Francisco, California.

19. Defendant's website is www.doordash.com.

20. Defendant's primary business is connecting consumers with businesses by delivering a business's products to the consumer. For example, DoorDash is used to deliver products to consumers from businesses such as grocery stores, restaurants, drug stores and convenience stores.

21. Wallace did not provide prior express written consent or any form of consent to Defendant to place prerecorded or artificial voice calls to his phone.

## DEFENDANT'S INCESSANT AND UNSTOPPABLE CALLS

22. Wallace never signed up for DoorDash's services, either as a patron, owner or manager of a business that used DoorDash, or as a driver.

23. Wallace never owned or managed a business that used DoorDash and never used his number in connection with a DoorDash account for himself or a business.

24. Since at least the beginning of 2021, Wallace began receiving incessant

robocalls on his cell phone. These robocalls stated the same thing:

> "Hello. This is DoorDash calling because we have detected that your tablet is currently powered off or not connected to the internet. Customers will no longer be able to place a DoorDash order for the remainder of the day unless this issue is resolved. If your store location is open, press 1. If your store location is closed, press 2 to let us know. If you believe you have received this call in error and would like to be opted out, please go to help.doordash.com/s/optout and our team can assist."

25. The caller's voice is a computer and is not a live person. The tone in the voice on the recording is unnatural in sound and in cadence.

26. The website communicated in the robocall is a page on Defendant's website. The page is titled "DoorDash Robocall Opt Out."

27. The website communicated in the robocall also states, "To opt out of future robocalls from DoorDash please fill out the form located at https://doordash-920643.workflowcloud.com/forms/799307f6-96df-4d08-8441-a16dbc01d1c7."

28. The link goes to an online form where a person can include their name, phone number, e-mail and details about the robocalls they received from DoorDash.

29. To date, since the beginning of 2021, Wallace has received hundreds of these identical robocalls from Defendant, and likely significantly more than 500 such calls. In short, Wallace has received so many robocalls from DoorDash that he cannot keep track of the calls as they constantly fill up his voicemail inbox, and he must delete the voicemail messages so his mailbox does not fill up.

30. Most days, Wallace receives one to three of these identical robocalls from Defendant.

31. Not only has Wallace received hundreds of annoying and incessant robocalls from DoorDash, he has received hundreds of calls from DoorDash after requesting that Defendant stop calling him.

32. Wallace followed Defendant's instructions in the robocall and completed

and submitted the form on the "DoorDash Robocall Opt Out" webpage to Defendant (Wallace's last name may have been listed as Herbert at the time he submitted the form) on multiple occasions yet continued to receive hundreds of robocalls from Defendant after submitting the form.

33. Wallace also called Defendant multiple times on the phone to advise Defendant of the problem and to request that the calls stop. Despite these requests, Wallace received hundreds of robocalls from Defendant and continues to receive these calls.

34. On information and belief, Wallace may have received additional phone calls from or on behalf of Defendant besides those identified in this Complaint.

## **DIRECT AND VICARIOUS LIABILITY**

35. Without the benefit of discovery, and because the robocalls only disclose Defendant's identity and identify a link to Defendant's website, Wallace assumes Defendant directly placed the calls at issue.

36. However, if some or all the calls were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

37. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is

unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

38. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

39. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

40. If Defendant directly placed the calls at issue to Wallace, Defendant is directly liable for the placing of those calls.

41. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

42. If Defendant did not directly place the calls at issue to Wallace, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

43. Likewise, Defendant also ratified their agents' violations of the TCPA by knowingly accepting the benefits of the robocalls placed on its behalf.

44. On information and belief, Defendant controlled or had the right to control the robocalling activities of those acting on its behalf.

45. Defendant acted as a principal to the agent(s) who were acting on their behalf.

46. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

47. For the count identified below, if Defendant directly placed the calls at

issue to Wallace, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b), *et seq.* (Prerecorded/Artificial Voice Violations)

48. Wallace incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

49. The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

50. A prerecorded voice call cannot be placed to a recipient without first obtaining the recipient's consent to place such calls. *See* 47 C.F.R. § 64.1200(a).

51. Wallace did not provide "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9), or any form of consent, for Defendant to contact him on his phone.

52. By placing calls to Plaintiff without first obtaining his consent to place such calls, Defendant violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1) and the TCPA's corresponding regulations.

53. The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

54. Defendant violated the Section 227(b) of the TCPA, and the TCPA's corresponding regulations, by placing the aforementioned prerecorded voice calls to Plaintiff's cellular phone.

55. Defendant knew or should have known it did not have the appropriate form of consent to contact Plaintiff.

56.  Defendant knew or should have known to stop placing robocalls to Wallace as he repeatedly requested that Defendant stop placing such calls.

57.  Wallace is entitled to injunctive relief under the TCPA to stop these robocalls, because without such intervention, the calls will never stop as demonstrated by Defendant's actions.  *See* 47 U.S.C. § 227(b)(3)(A).

58.  Plaintiff is entitled to $500 per each of Defendant's violations of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Jasson Wallace requests that the Court enter judgment against Defendant DoorDash, Inc. in an amount in excess of $500,000 for all damages available under the TCPA, to enjoin Defendant from continuing to call Wallace's phone, for all applicable pre- and post-judgment interest, for all recoverable costs, and all other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Jasson Wallace demands a jury trial.

| | |
|---|---|
| Dated: November 25, 2024 | Respectfully submitted, |
| | MILLER SHAH LLP |
| | */s/James C. Shah* |
| | James C. Shah (SBN 260435) |
| | Email: jcshah@millershah.com |
| | Kolin C. Tang (SBN 279834) |
| | Email: kctang@millershah.com |
| | 19712 MacArthur Blvd., Suite 222 |
| | Irvine, California 92612 |
| | Telephone: (866) 540-5505 |
| | Facsimile: (866) 300-7367 |
| | |
| | BUTSCH ROBERTS & ASSOCIATES LLC |
| | |
| | */s/Christopher E. Roberts* |
| | Christopher E. Roberts (phv forthcoming) |
| | Email: CRoberts@butschroberts.com |
| | 7777 Bonhomme Avenue, Suite 1300 |
| | Clayton, Missouri 63105 |
| | Telephone: (314) 863-5700 |
| | |
| | *Attorneys for Plaintiff* |